1     JUROR:  Yes.

2     THE COURT:  Thank you.

3     THE COURT:  I will ask Mr. Pichini or Mr.

4   Doss if you would introduce your Special Agent who

5   is assisting you and also identify by name and if

6   present, have stand any law enforcement officers who

7   may be called in this matter.

8     MR. PICHINI:  With the Court's permission

9   and ladies and gentlemen of the defense.  To my left

10  is Warren Griggs, he is an FBI agent, he will be

11  assisting the prosecution team in this case.

12    With the Court's permission, I'll read a

13  list of FBI agents and at least one witness, FBI

14  Agent James Sweeney, these are agents and police

15  officers that the government may call in the course

16  of the trial.

17    Special Agent Timothy Turck, Special Agent

18  Richard Macko, Special Agent Robert Norton, Special

19  Agent Joseph Stone, Special Agent James Williamson,

20  there is also one civilian witness that I will ask

21  if you know the name, if you know the person, Wayne

22  Caldwell.

23    The following is a list of Philadelphia

24  Police Officers that the government may call at

25  trial.  Detective Lamott Wesson, Detective Paul

1  Worrel, Detective John Rossiter, Detective Kenneth

2  Curcio, Detective Michael Cohen, Detective Howard

3  Gelfand and Officer Ernest Bottomer, Officer James

4  Bushman, Officer Michael Banach and Officer Frank

5  Harvey.

6          THE COURT:  Very well, thank you.

7          Are there any other persons who counsel

8  would believe should be identified as potential

9  witnesses?

10          MR. ROGERS:  From either side, your Honor?

11          THE COURT:  Sure.

12          MR. ROGERS:  May I have a moment, sir?

13          (Pause.)

14          MR. ROGERS:  May I, your Honor?

15          THE COURT: Yes, you may.

16          MR. ROGERS:  Ladies and gentlemen, there

17  are possible witnesses that I have on this list,

18  they may or may not testify on behalf of the

19  defendant, Termaine Jackson.

20          Rev. Peter J. E. Harris.  Warren Stewart

21  Bennett, Dr. Robert Cataman, Jose Castro, Craig

22  Jackson or Eric Johnson, I believe they are the same

23  person.  Dr. Andrew Levette.

24          THE COURT:  Very good.

25          Miss Lefeber, do you have anyone?

1    MISS LEFEBER:  Not at this time, your

2  Honor.

3    THE COURT:  Ladies and gentlemen, you have

4  heard names read to you by the attorney for the

5  government and the attorney for Mr. Jackson and I

6  would ask whether any member of the panel recognizes

7  the name of any potential witness in this case, if

8  so, would you kindly raise your hand?

9    There are no hands and the answer is

10  recorded as no.

11    Now, the incident that has formed a basis

12  for the indictment return in this matter involve a

13  car stop, gun fire, several individuals struck by

14  gun fire at -- two identified as FBI agents.  One

15  who is now deceased, alleged to have been an

16  occupant of a car that was stopped, it occurred

17  during the day time on March 16th, 1994.  And, at

18  the time was the subject of news articles, some

19  television and radio reports and perhaps other media

20  publicity.

21    I ask whether any of you recall hearing or

22  reading or seeing anything at all about this

23  incident? If so, would you raise your hand.

24    There are quite a few hands now.

25    I will start on the first row and only ask

1    you to identify yourself with your name and number

2    as to what it is that you heard or read or saw.  I

3    will ask you that later on.  I do not want you to

4    tell me what it is.

5              Can you kindly tell me your number.

6              JUROR:  77, Mary Donahue.

7              THE COURT:  Thank you, Miss Donahue.

8              On the second row, I think I saw several

9    hands.  Starting with the gentleman seated fifth in,

10   yes.

11             JUROR:  Elwood Watson, 325.

12             THE COURT:  Thank you, Mr. Watson.

13             The gentlemen immediately in front of me.

14             JUROR:  157, Frederick Keeler.

15             THE COURT:  Thank you, sir.  Yes, sir.

16             JUROR:  Number 41, Gerald Carey.

17             THE COURT:  All right, thank you, sir.

18             Yes, sir.

19             JUROR:  126, James Hammerman.

20             THE COURT:  Thank you, Mr. Hammerman.

21             Anyone else on the second row?

22             JUROR:  311, Robert Sunshine.

23             THE COURT:  Anyone else in the second row?

24             The third row, the gentleman seated first?

25             JUROR:  114, Gerard Golin.

1        THE COURT:  All right.  Thank you, Mr.

2    Golin.

3        Anyone else?  Yes, sir.

4        JUROR:  357, Dale Conicella.

5        THE COURT:  Okay.

6        Anyone else?

7        JUROR:  272, Sandra Schaeffer.

8        THE COURT:  Thank you, Miss Schaeffer.

9        Any other member of the panel who recalls

10   anything about this incident or reading or hearing

11   anything about it?

12       We will call on you a little later to find

13   out in greater detail what it is that you recall

14   about the incident.

15       There's a delicatessen at 15th and Bristol,

16   Whitfield's.

17       Has any member of the panel ever been to

18   Whitfield's or know anything about Whitfield's?

19       THE COURT:  There are no hands and the

20   answer is recorded as no.

21       If you have ever served on a jury in any

22   court, would you kindly raise your hand.

23       THE COURT:  Okay, quite a few.

24       All right and I will start on the first

25   row, sir, and ask you, the gentleman seated 7th.

1          JUROR:  185, Stanley Macielag.

2          THE COURT:  May I ask you, sir, when you

3    served on the jury?

4          JUROR:  Mid '70s.

5          THE COURT:  Was that in a federal court or

6    a state court.?

7          JUROR:  State, Delaware County.

8          THE COURT:  Was it in a criminal or a civil

9    trial.

10         JUROR:  Criminal.

11         THE COURT:  Without telling me what verdict

12   the jury reached, did you reach a verdict?

13         JUROR:  Yes, we did.

14         THE COURT:  Now, whenever you served, you

15   became somewhat familiar with courtroom procedures

16   and the instructions of the court, and the facts of

17   the particular case upon which you served as a

18   juror.

19         In this case, we would ask you to consider

20   only the evidence presented in this case and

21   regardless of what you may have learned as to the

22   law in another case, that you decide this case

23   solely on the law as I instruct you.

24         If you were called upon to serve on this

25   jury, do you believe that you could decide this case

1  only on the law, as I instruct you and on the

2  evidence in this case?

3         JUROR:  Yes.

4         THE COURT:  Thank you, sir.

5         Yes, ma'am.

6         JUROR:  Number 32, Anna Bunalo.

7         THE COURT:  When did you serve on a jury?

8         JUROR:  In the '80s.

9         THE COURT:  Was that in federal court or in

10  state court?

11         JUROR:  In Philadelphia.

12         THE COURT:  Was it a civil case or a

13  criminal case?

14         JUROR:  I was on both.

15         THE COURT:  Did you reach verdicts on both

16  cases?

17         JUROR:  Yes, we did.

18         THE COURT:  So that you have in terms of

19  any type of jury experience, you have two

20  experiences, one in a civil case and one in a

21  criminal case?

22         JUROR:  Yes.

23         THE COURT:  Would you be able to decide

24  this case, solely on the evidence presented here and

25  my instructions to you, putting aside anything that

1  you may have learned as to the law, any other case?

2          JUROR:  Yes.

3          THE COURT:  Thank you.

4          JUROR:  Patricia Branch, 27.

5          THE COURT:  Miss Branch, can you tell us

6  when you served on a jury?

7          JUROR:  In '90.

8          THE COURT:  Was it in state court?

9          JUROR:  State.

10         THE COURT:  Have you had more than one

11 experience as a juror?

12         JUROR:  No.

13         THE COURT:  In that state court case, was

14 that a criminal or a civil case?

15         JUROR:  Civil.

16         THE COURT:  Did you reach a verdict?

17         JUROR:  They settled out of court.

18         THE COURT:  So you did not have the judge

19 charge you or instruct you as to the law in that

20 case, but in any event if you were called upon to

21 serve in this case, would you be able to decide this

22 case solely on the law presented in this case, as I

23 instruct you and the evidence presented in this

24 case?

25         JUROR:  Yes.

1    THE COURT:  Very well, thank you.

2    THE COURT:  Yes, ma'am.

3    JUROR:  Juror 141, my name is Roswitha

4 Hoenisch.  I served in Doylestown, in Bucks County.

5 And we did come to a verdict.  It was a civil case.

6    THE COURT:  Is that your only experience as

7 a juror?

8    JUROR:  Yes.

9    THE COURT:  About when was that, do you

10 know?

11    JUROR:  That was in December of '93, just

12 this past December.

13    THE COURT:  If you are called upon to serve

14 on this jury, do you believe that you could decide

15 this case solely on the evidence presented here and

16 my instructions to you.

17    JUROR:  Unfortunately, I'm getting to form

18 an opinion already.

19    I don't think I can be partial or impartial

20 rather.

21    THE COURT:  All right.  I noted that and we

22 may have occasion to talk to you later.  Yes.

23    JUROR:  Juror number 104, Jo Lund Galligan.

24    THE COURT:  Miss Galligan.

25    THE COURT:  When did you serve on a jury?

1      JUROR:   In approximately 1990, in

2  Allentown.

3      THE COURT:   Federal case or a civil or

4  criminal?

5      JUROR:   Criminal.

6      THE COURT:   Federal or state I meant to ask

7  you?

8      JUROR:   I'm not sure.

9      THE COURT:   But, it was a criminal case?

10      JUROR:   Yes, it was.

11      THE COURT:   Did you reach a verdict?.

12      JUROR:   I'm not sure about that either, I

13  wasn't there.

14      THE COURT:   You served but did not complete

15  your service, is that correct?

16      JUROR:   That is correct.

17      THE COURT:   You were excused prior to the

18  trial; did you hear some evidence in the case.

19      JUROR:   Yes.

20      THE COURT:   In any event, whatever it is

21  that you learned in that case, would you be able to

22  decide this case solely on the evidence presented

23  here and my instructions to you?

24      JUROR:   I believe so.

25      THE COURT:   Thank you.

1    JUROR:  77, Mary Donahue.  I served in the

2    Philadelphia Court, whatever that was, it was a

3    criminal case, two criminal cases in the '70s and

4    they both had a verdict.  Then later, probably in

5    '90, I may have served again in a civil suit that

6    was settled out of court.

7    THE COURT:  You had two criminal cases

8    which reached verdict, one civil case, which settled

9    out of court and I would ask you the question, I

10   have been asking other jurors, notwithstanding your

11   experience as a juror, if you were called upon to

12   serve in this case, could you decide this case on

13   the evidence presented and my instructions to you?

14   JUROR:  Yes.

15   THE COURT:  Thank you.

16   The second row.

17   JUROR:  William Carson, number 44.  I served

18   on a criminal case in 1979, in Morristown, New

19   Jersey, in the state court.

20   THE COURT:  Did you reach a verdict in that

21   case?

22   JUROR:  We did.

23   THE COURT:  Notwithstanding your prior

24   experience as a juror in a case, if you are called

25   upon to serve in this case, do you believe you will

1  be able to decide this case solely on the evidence

2  presented here and my instructions to you?

3            JUROR:  Yes.

4            JUROR:  Number 29, Joe Brooks.

5            THE COURT:  Mr. Brooks, where, when and

6  where did you serve?

7            JUROR:  In 1990, in Montgomery County, in

8  Norristown.  A criminal case and it was a hung jury.

9            THE COURT: If you are called upon to serve

10  in this case, do you believe you can do that and

11  decide this case solely on the evidence presented

12  here and my instructions to you?

13            JUROR: Yes, sir.

14            THE COURT:  Thank you.

15            Any others on the second row?

16            JUROR:  Number 34, Vince Busavage.

17            THE COURT: Mr. Busavage, when did you

18  serve?

19            JUROR:  In 1990, in Allentown.  It was

20  civil.

21            THE COURT:  Did you reach a verdict?

22            JUROR:  I wasn't there.  I was the

23  alternate juror.

24            THE COURT:  Do you believe that

25  notwithstanding whatever experience you had in that

case, that you could decide this case solely on the
evidence presented here and the law as I instruct
you?

JUROR: Yes.

THE COURT: The next row, yes.

JUROR: Number 114, Gerald Golin.

THE COURT: Mr. Golin, when and where did
you serve?

JUROR: On two juries, the first one in
1989. The second one in 1992. They were both
state. They were both criminal and we reached
verdicts in both of them.

THE COURT: If called upon to serve on this
jury, could you decide this case solely on the
evidence presented here and my instructions to you?

JUROR: Yes, sir.

THE COURT: Thank you.

Any others?

JUROR: 272, Sandra Schaeffer.

THE COURT: Pardon me, what is your --
okay I have it.

JUROR: 272.

THE COURT: Yes. When did you serve, Miss
Schaeffer?

JUROR: I think it was in '74.

1        THE COURT:  In what court?

2        JUROR:  Allentown, in state court, and it

3    was a criminal case.

4        THE COURT:  Did you reach a verdict?

5        JUROR:  Yes.

6        THE COURT: If called upon to serve in this

7    case, do you believe you could decide this case

8    solely on the evidence presented here and my

9    instructions to you?

10        JUROR: Yes, sir.

11        THE COURT:  Thank you.

12        Any other member of the panel who has

13    served on a jury?

14        Has any member of this panel personally

15    been the victim of a crime, if so, would you raise

16    your hand?

17        I will go to the second row immediately in

18    front of me.  Yes.

19        JUROR:  Number 157, Fred Keeler.

20        THE COURT:  All right.  May I ask when you

21    had this experience and without going into detail,

22    just what.

23        JUROR:  It was January 15th of this year.

24    It was an assault.

25        THE COURT:  By someone you knew or had a

personal relationship or by a stranger?

JUROR: Strangers.

THE COURT: Was anyone ever apprehended?

JUROR: No.

THE COURT: You have not had any experience in court on that case?

JUROR: No.

THE COURT: Would the fact that you have been the victim of this conduct by others, have any affect upon you whatsoever, if you were called upon to serve in this case?

JUROR: Yes.

THE COURT: Okay, we will probably inquire of you later. Okay.

Any other juror personally the victim of a crime? I think I see a juror four seats from the end on the second row, yes.

JUROR: Yes, your Honor, in the late '70s, I was robbed at gunpoint.

THE COURT: What is your name and number?

JUROR: I'm sorry, 311. My name is Robert Sunshine.

THE COURT: Was anyone apprehended as a result of that?

JUROR: No.

1          THE COURT:  You had never gone to court on

2    that case?

3          JUROR:  No, your Honor.

4          THE COURT:  Would the fact that you had

5    this experience impact you in any way, if you were

6    called upon to serve on this jury?

7          JUROR:  That experience would not.  I would

8    have other concerns, due to my profession, but that

9    particular experience itself would not be a factor.

10          THE COURT:  And, you are a center director

11    for the Pennsylvania Department of Correction?

12          JUROR:  Yes, your Honor.

13          THE COURT:  It is that experience may

14    have?

15          JUROR:  I work with the police department

16    as well as occasionally the FBI.

17          THE COURT:  All right.  Thank you.  If that

18    question comes up in another context, when you hear

19    it again, we already have your answer.

20          Victim of crime, any other juror?

21          JUROR:  Number 34, Vince Busavage.  I had

22    my car broken into twice.

23          THE COURT: Pardon me?

24          JUROR:  My car was broken into twice. I

25    don't know if it is in that class, last year.  And

1    about three years ago, a stereo was stolen and the

2    car, you know, was vandalized.

3            THE COURT:  Anyone ever apprehended?

4            JUROR:  No.

5            THE COURT:  If you were called upon to

6    serve on this jury, could you put that aside and

7    decide this case solely on the evidence presented

8    here and my instructions to you?

9            JUROR:  Yes.

10           THE COURT:  You could.  Thank you.

11           THE COURT:  Yes, ma'am.

12           JUROR:  Your Honor I didn't understand a

13   victim of a crime meant other than assault, if you

14   meant your property was -- your house broken into,

15   is that what you call a crime?

16           THE COURT:  That type of experience that

17   you had, which you would think would be a police

18   matter?

19           JUROR:  I was robbed.  I don't know.

20           THE COURT: That's criminal.

21           What is your name and number?

22           JUROR: Eleanor Tarbox, 313.

23           THE COURT:  When were you robbed, Miss

24   Tarbox?

25           JUROR:  About ten years ago.

THE COURT:  Anyone ever apprehended?

JUROR:  No.

THE COURT:  On that, we have a perfect record so far.

Well, that experience that you had, do you think you would be the appropriate person to decide the guilt or innocence of the defendants in a criminal case?

JUROR:  I would think it would be a separate issue not related at all.

THE COURT:  Not related at all.  So you don't think it would have any impact?

JUROR:  I don't think so, your Honor.

THE COURT:  Thank you.

Yes.

JUROR:  A car stolen.

THE COURT:  Your number?

JUROR:  126, James Hammerman.

THE COURT: Anyone ever apprehended?

JUROR:  In the house break-in, there were a number in the area.  Yes, an individual was apprehended.

THE COURT:  May I ask whether you were ever called to go to court on that matter?

JUROR:  I was not.

1        THE COURT:  Did you have contact with law

2    enforcement officials in regard to it?

3        JUROR:  Yes.

4        THE COURT:  Do you know of anything about

5    that incident that you believe would make it

6    inappropriate for you to serve on a jury?

7        JUROR:  I don't think so.

8        THE COURT:  Do you think you could decide

9    this case solely on the evidence here, presented in

10   open court and my instructions to you?

11       JUROR:  I think I could.

12       THE COURT:  Thank you.

13       THE COURT:  The second row.  We are going

14   to the third row.  I see the juror seated number 40,

15   I guess.

16       JUROR:  264.

17       THE COURT:  She is number 39.

18       JUROR:  264, I was robbed at gunpoint when

19   I was about 15.

20       THE COURT:  Was an arrest ever made in that

21   case?

22       JUROR:  No.

23       THE COURT:  Considering that experience, do

24   you believe if called upon to serve on this jury,

25   you can put it aside and decide this case only on

the evidence presented here and my instructions to
you?

JUROR:  I don't know.

THE COURT:  Thank you.

THE COURT:  Now I have asked about the
panel members being victims of crime.  All of us, of
course, I should not say that.  I'll strike that.

Sometimes even though a person is not
personally the victim of a crime, someone else is
the victim of a crime and that person is so close to
you, either because of relationship or friendship,
that it has some impact on you and it has an affect
upon you.

Any member of this panel know of any
incident involving a relative or friend who was
involved in a crime, which would in any way affect
you, if you were called upon to serve on this jury?
If so, would you raise your hand.

There are no hands and the answer is
recorded as no.

Has any member of this panel ever been
called as a witness either for the prosecution or
for the defense in a criminal matter?  If so, would
you raise your hands.

I see several hands.  We will explore that,

1  starting with the person seated first on the second

2  row.

3           JUROR:  Deanne Stewart, 308.

4           THE COURT:  Miss Stewart, you have been a

5  witness?

6           JUROR:  Yes.  I'm still going to court.

7           THE COURT:  Were you called by the

8  prosecution or by the person charged with the

9  crime?

10          JUROR:  I was called by the prosecution.

11          THE COURT:  Pardon me?

12          JUROR:  The prosecution.

13          THE COURT:  Did you have occasion to

14  testify?

15          JUROR:  Excuse me?

16          THE COURT:  Did you actually testify?

17          JUROR:  No.

18          THE COURT:  Was there anything about that

19  experience of being a participant in a trial, that

20  would affect you if you were called upon to serve on

21  this jury?

22          Do you think you could decide this case

23  solely on the evidence presented here and my

24  instructions to you?

25          JUROR: Yes, sir.

1        THE COURT: Thank you.

2        THE COURT:  Still working, I guess the

3  second row, any others on the second row?

4        Yes, is your hand up, sir?

5        JUROR:  Yes, your Honor, 311.  I had an

6  opportunity to testify in state court or with the

7  Commonwealth concerning the status of an escape of

8  Department of Correction inmates.

9        THE COURT:  All right.  Thank you, sir.

10  Next.

11        JUROR:  178, James Livezey.

12        THE COURT:  You have appeared as a

13  witness?

14        JUROR:  Yes.  I never testified.

15        THE COURT:  You never testified?

16        Were you called by the defense or the

17  prosecution?

18        JUROR:  By the prosecution.

19        THE COURT:  Is there anything at all about

20  that experience, which would have any effect upon

21  you, if you were called upon to, if you were called

22  upon as a juror in this case?

23        JUROR:  No.

24        JUROR:  Number 80, Frank Du Bree.  I was a

25  policeman about 25 years ago, when I was involved in

1    a killing at Eleventh and Market Street, but I never

2    had to testify in court because the person who did

3    the killing was killed by state police, a couple of

4    days later, upstate somewheres in a holdup. I never

5    testified in court.

6          THE COURT: Would your experience in that

7    situation, have any impact upon you, if you were

8    called upon to serve in this case?

9          JUROR: No.

10        THE COURT: Thank you.

11        JUROR: 357, Dale Conicella. 1989. I

12   worked for a transportation company in that general

13   area. I followed a couple of guys that stole stuff

14   off the dock and I was called by the prosecution to

15   testify.

16        THE COURT: Did you testify?

17        JUROR: Yes.

18        THE COURT: Was there anything about that

19   proceeding, the manner in which you were treated on

20   direct or cross-examination which would have any

21   impact upon you, if you were called upon to serve?

22        JUROR: No.

23        THE COURT: Your answer is no?

24        JUROR: No.

25        THE COURT: Thank you.

1    Ladies and gentlemen as you know --

2    MR. PICHINI:  I think there is someone in

3    the back row.

4    JUROR:  115, Goryl, military court-martial,

5    for the defense, as a character witness for one of

6    my troops, about 10 years ago.

7    THE COURT:  Is there anything about that,

8    would in any way affect you, if you were called upon

9    to serve?

10    JUROR:  No.

11    THE COURT:  Ladies and gentlemen, as you

12    know, we have state, federal and local governments

13    and all have, under some name or designation, law

14    enforcement officers who serve the particular

15    governmental unit in enforcing the law.

16    Have you ever been involved as a law

17    enforcement person for any governmental agency, be

18    it state, local or federal? If so, would you raise

19    your hand.  I see one hand.  Yes, sir.

20    JUROR:  Number 115.

21    THE COURT:  Yes, sir.

22    JUROR: I am a retired from the Air Force

23    Security Police.  Most of my time was with special

24    operations troops, never did any law enforcement

25    duties per se.

1      THE COURT:  Does any member of this panel

2  have any family member who is presently employed in

3  law enforcement?  Okay.

4      JUROR:  Otto Lange, 171.

5      THE COURT:  Mr. Lange.

6      JUROR:  I have a cousin, female, I think is

7  still in the police department, either one or the

8  other or both of them, one female and one male.

9      THE COURT: That's with the Philadelphia

10  Police?

11      JUROR:  Yes.

12      THE COURT:  Do you have occasion to discuss

13  with the persons, their law enforcement duties and

14  experiences?

15      JUROR:  No.

16      THE COURT:  Would the fact that there is a

17  relative associated with law enforcement have any

18  affect upon you, if you were called upon to serve?

19      JUROR:  No.

20      THE COURT:  Thank you.

21      JUROR:  Number 66, Dominic Daulerio.  I

22  have two cousins on the Philadelphia Police

23  Department and my sister is a secretary for a police

24  department in New Jersey.

25      THE COURT:  Are these persons that you have

occasion to see often and discuss their police

work?

JUROR:  We don't discuss it.

THE COURT: Would the fact that you have

these cousins on the Philadelphia Police Department

have any affect upon you?

JUROR:  No.

THE COURT:  Thank you.

I see on the second row, juror seated

number one.

JUROR:  Deanne Stewart, number 308.  I have

a brother-in-law who is a police officer for the

18th District.

THE COURT:  You have a brother-in-law, who

is a police officer where?

JUROR:  The 18th District.

THE COURT:  Do you have occasion to talk to

your brother-in-law very often about his duties as a

police officer and so forth?

JUROR: No, sir.

THE COURT:  Would the fact he is on the

police department, have any affect upon you, if you

were called upon to serve?

JUROR: No, sir.

THE COURT:  Thank you.

1          And now we are going to the last row and

2    the juror seated second in the last row.

3          JUROR:  Number 65, Brian Dalton.

4          THE COURT:  Who do you know in the police

5    department?

6          JUROR:  My father is a lieutenant in Bucks

7    County Sheriff's Department.

8          THE COURT:  You live at home with your

9    father?.

10         JUROR:  Yes.

11         THE COURT:  Do you talk to him very often

12   about his duties as a law enforcement officer?

13         JUROR:  Yes.

14         THE COURT:  You do.

15         Would the fact that your father is a law

16   enforcement officer have any affect upon you if you

17   were called upon to serve?

18         JUROR:  Yes.

19         THE COURT: Very well.  Thank you.

20         Yes, sir.

21         JUROR:  Number 80, Frank Du Bree. I have a

22   nephew who's a secret serviceman.

23         THE COURT:  Is he stationed locally?

24         JUROR:  Pardon me?

25         THE COURT:  Is he stationed in this area?

JUROR: Yes, sir, at times.

THE COURT: Do you think the fact that you have this nephew, who is in the secret service, that fact would have any affect upon you?

JUROR: No, sir.

THE COURT: Thank you.

The juror seated.

JUROR: Number 37, Colleen McCafferty. My brother-in-law is a policeman on the Haverford Police Department.

THE COURT: Do you have an opportunity to see your brother-in-law and discuss his police work?

JUROR: Yes, sir.

THE COURT: You do. Is that on a pretty regular basis?

JUROR: Yes, sir.

THE COURT: Do you think that would have any affect upon you, if you were called upon to serve?

JUROR: I don't think so. I was going to be asked to be excused anyway because I have an eight month old baby I'm still nursing.

THE COURT: Okay. That does not mean you are excused, but it is something for us to consider.

We will consider that fact. Thank you.

1          Have any of you, at any time in your life

2  been charged with any criminal conduct? And would

3  you kindly raise your hand.

4          There are no hands and the answer is

5  recorded as no.

6          Has any close family member been charged

7  with criminal conduct, if so, would you raise your

8  hand.

9          I note juror number 301.

10          If you prefer I can ask you about that at

11  sidebar.

12          JUROR:  Number 171.  May I discuss that

13  question at sidebar?

14          THE COURT:  Okay.

15          Anyone else on the first row?

16          On the second.  Miss Stewart.

17          JUROR:  Yes.

18          THE COURT:  Do you want to talk about it

19  here or at sidebar?

20          JUROR:  Deanne Stewart, 308.  I have a

21  sister serving time in Muncey Prison.

22          THE COURT:  Would the fact of your sister

23  had this experience and is now incarcerated in

24  Muncey, affect you in any way if you were called

25  upon to serve on this jury?

1    JUROR: No, sir.

2    THE COURT: Do you think you can decide this

3    case solely on the evidence presented here and my

4    instructions to you?

5    JUROR: Yes, sir.

6    THE COURT:  Let's see, anyone else?   I

7    think we are going to juror 40.

8    JUROR:   Number 37.

9    THE COURT:   Seated 40, juror 37.

10    JUROR:  My brother-in-law, another one, he

11    had a restraining order and he was jailed because of

12    it.

13    THE COURT: Did you say another one?

14    JUROR:  A different one.

15    THE COURT:  The one different than the

16    police officer?

17    JUROR:  Yes.

18    THE COURT:  Would the fact that now you

19    have this --  you have a brother-in-law, who has

20    been apparently physically restrained because of a

21    violation of a restraining order, would that have

22    any impact upon you or would you be able to decide

23    this case solely on the evidence here?

24    JUROR: Yes, sir.

25    THE COURT:  Thank you.

1        Any other -- does any member of this panel

2   have any dispute, either full fledged lawsuit or

3   before an administrative agency or a claim pending

4   for or against you, which has been brought or which

5   involves the federal government?  Any tax claims,

6   suits by the federal government to collect

7   anything?

8        Any type of claim against you by the

9   federal government?  If so, would you raise your

10  hand.

11       Do any of you have claims against the

12  federal government in any respect and if so, would

13  you raise your hand?

14       Now, I have mentioned to you, that

15  defendants are charged with criminal conduct arising

16  out of a particular incident.

17       During the course of the trial, I will have

18  occasion to tell you, that the indictment against --

19  which charges these defendants with crime is not in

20  itself evidence of any criminal activity. It is

21  simply the government's way of notifying a person of

22  the charges against the particular person and that

23  it is not evidence, merely because they have been

24  charged, that is not evidence that they committed

25  any offense.

Is there any juror who would not be able to abide by such an instruction? If so, would you raise your hand.

I see no hands and the answer is recorded as no.

After indictment, at trial, the burden is on the government to prove a defendant guilty of an offense charged and to do so beyond a reasonable doubt, to prove his guilt as to each essential element of the offense charged beyond a reasonable doubt.

So that a defendant in a criminal case, need not produce any evidence and it is the government's burden to prove him guilty and not the burden of the defendant to prove his innocence.

Is there any member of the panel that disagrees with that legal statement or could not follow such a statement? If so, would you kindly raise your hand.

THE COURT: Now, during the course of this trial, you will probably hear testimony of alleged drug dealing. Since there will be some evidence concerning narcotics or drugs, I ask whether any member of this panel has personally experienced any problems with the use of substances which - - with

the illegal use of controlled substances or drugs,

if you had any problem either by using them or in

any way being in contact with them, would you kindly

raise your hand.

Within your immediate family structure, is

there any person in your family, who has a problem

with drugs, if so, would you raise your hand.

THE COURT: All right. Juror number 301.

I believe juror number 37. And I can

inquire of you at sidebar later on if we need to

unless -- I see another juror.

JUROR: 325.

THE COURT: That is Mr. Watson.

Anyone else?

Just as an aside from jury selection

problems, but just a logistical problem. I know

that some of you may have come in today from out of

town and I just want to inquire whether any of you

have any urgent transportation problems, scheduling

or so forth, if so, would you raise your hand?

We seem to be all right.

Do any of you know of any reason why a

person in your circumstance, with your frame of

mind, why you should not, with whatever frame of

mind you have, do you know of any reason why you

1  should not serve on this jury?  If so, would you

2  raise your hand.

3          There's one.

4          JUROR:  Otto Lange, 171, at sidebar.

5          THE COURT:  You would like to tell me at

6  sidebar, I'll honor that, Mr. Lange.

7          I think I saw a couple of other hands.

8          JUROR:  Keeler, Fred Keeler, number 157.  I

9  would like to talk at sidebar.

10         THE COURT:  Okay.

11         Yes, sir.

12         JUROR:  126, James Hammerman.

13         THE COURT:  Mr. Hammerman, you wish to

14 disclose it or talk at sidebar about it?

15         JUROR:  I would say what I saw in the

16 newspaper accounts --

17         THE COURT:  Okay, let's not because you

18 have fellow jurors that may not know what you read.

19 Based on what you read you think you shouldn't

20 serve?

21         JUROR:  I have questions about it.

22         THE COURT:  I got to the jurors in the

23 first row.

24         JUROR:  Juror 104, Jo Lund Galligan.

25 Sidebar, please.

1          THE COURT:  Okay.  Pardon me.  Why is it

2     that you think you should not serve or --

3          JUROR:  Sidebar.

4          THE COURT:  All right.

5          There are other hands and I see Miss

6     Stewart, I believe, is it?

7          JUROR:  Yes.

8          THE COURT:  You believe you should not

9     serve?

10         JUROR:  Yes.

11         THE COURT:  Let's see, maybe I will ask you

12    to stand, I'll have a better chance to identify all

13    of you.

14         If you would stand in addition to raise

15    your hand, you stand.

16         That's fine.  I'll go in the first row.

17         JUROR:  Juror 141, Roswitha Hoenisch.  I

18    believe before, you told me you would call me to the

19    sidebar later.  It is about the same thing.

20         THE COURT:  Fine.

21         JUROR:  Juror 77, Mary Donahue.  I feel it

22    probably will be a long trial and it would be very

23    inconvenient to my employer.

24         THE COURT:  Okay.  We will take that into

25    consideration.

1    I don't know whether it will be a long

2  trial or not.  I'm always optimistic that it will be

3  a matter of days.  The lawyers are always

4  pessimistic, it is a matter of weeks but I suspect

5  it will probably extend into next week and maybe

6  consume all of next week.  It may be a little longer

7  or a little shorter, I don't know.

8    I know that you are concerned and we will

9  see if we can honor that.

10   Having heard --

11   JUROR:  Juror 227, Dave Nudge.

12   I have a Florida vacation scheduled with my

13 children on September 30th, to begin on September

14 30th.

15   THE COURT:  Do you think we may turn you

16 down but not the children?

17   JUROR:  I don't know.

18   THE COURT:  It is something to be

19 considered and we will consider it.

20   And Miss Snyder.

21   JUROR:  In my employment, I'm responsible

22 for making wage payments to individuals and they

23 would not be getting any payments during the time I

24 would be here.  There's nobody else to do that for

25 me.  It might be a hardship for them.

1        THE COURT: Thank you. Let's see where we

2   are. Going back to the second row.  I'll come back

3   to Mr. Sunshine.

4        JUROR:  Yes, your Honor.  Two factors.  My

5   current knowledge of the case as well as my

6   involvement with the Department of Corrections,

7   would make it difficult for me to be as impartial as

8   I feel one should be.

9        THE COURT:  All right.  Thank you.

10       Ma'am, may ask your number?

11       JUROR:  I believe it is 72.

12       THE COURT:  Is it Elizabeth Derham.

13       That's juror number 71.

14       You believe for some reason that a person

15  in your state of mind should not serve?

16       JUROR:  I have some priorities this week to

17  make it difficult for me to continue on the case.

18       THE COURT:  We will probably inquire

19  further of you.

20       THE COURT:  What's your number again?

21       JUROR:  313, Eleanor Tarbox.

22       Pure selfishness.  I have nonrefundable

23  tickets to go to Salt Lake City to see my daughter

24  for her birthday, and an unknown grandchild, the

25  28th of September.

1          THE COURT:  The grandchild was just

2     recently born?

3          JUROR:  No, but I still haven't seen him.

4     He is two years old, if you call that recent.

5          THE COURT:  I'm taking all of this

6     information.  I don't know that we can honor all of

7     these requests or not.  But, it is amazing how jury

8     selection works out in the final analysis, so when

9     we put all the information in, hopefully those of

10    you who have these problems, we will be able to

11    consider them.

12          JUROR:  134, I would like to say I'm a

13    night time employee and usually I'm sleeping at this

14    time of the day.  I'm not positive my attention span

15    will be what it should be.

16          THE COURT:  So, when you work in the

17    evenings, you would work that shift. You mean having

18    missed sleep at night, you are not sure?

19          JUROR:  I probably won't be working while

20    this is going on but I'm not positive I wouldn't

21    have to.

22          THE COURT:  All right.  We will take it

23    into consideration.

24          THE COURT: Mrs. Roll, is it?

25          JUROR:  I would like to see you at sidebar.

1       THE COURT:  Okay.  There are certain things

2   in the way of instruction that the jurors will be

3   given from time to time.  One is that the law does

4   not provide for any greater credibility to a person

5   because of his or her position or status in life.

6       So that if a witness is called and that

7   witness is a doctor or a lawyer or a police officer

8   or an accountant, whatever position in life they may

9   be, jurors are not to credit that person's testimony

10  merely because of the position that he or she holds

11  and that is particularly true as it relates to

12  witnesses who are called in cases.  We give no

13  greater credibility to those who are called by the

14  government or connected to the government in some

15  way than we do to any other witness.

16      Jurors are asked to ascertain and determine

17  credibility on the basis of the evidence that they

18  hear from the witness and the believability of the

19  witness and not based upon the job or position that

20  the witness holds.

21      Is there anyone that believes that a

22  witness associated with the government should

23  receive --  should be accorded greater believability

24  than one not associated with the government?  If so,

25  would you kindly raise your hand.

1    Is there any person here that believes that

2    a witness who is called or identified to some extent

3    with defendants, should be accorded greater

4    credibility than other witnesses just because of

5    their -- the fact that they are identified with the

6    defense? If so, would you raise your hand.

7    There are no hands to either question and

8    the answer is no.

9    You should not be influenced by religion or

10   race or color or sex or ethnic background of a

11   witness in considering the credibility or the

12   believability of a witness' testimony.

13   Is there any member of this panel that

14   believes that for some reason, factors such as

15   religion, color, sex or ethnic background would

16   affect your determining the believability or the

17   credibility of a witness? If so, would you raise

18   your hand.

19   There are no hands and the answer is

20   recorded as no.

21   Witnesses will be called to the witness box

22   or testify from the witness stand here. We have an

23   amplification system in court and we suspect that

24   generally, and we will strive in all cases to have

25   the witness speak in a loud enough voice so you can

1    hear the witness.

2         However, is there any juror that believes

3    that because of a hearing problem, you would not be

4    able to follow the evidence as it is presented in

5    court?  If so, would you raise your hand?

6         Do you know of any type of physical or

7    mental or emotional difficulty or disability that

8    you have, that would make it difficult for you to

9    pay attention to and follow the evidence as it is

10   presented here in open court? If so, would you raise

11   your hand.  There are two hands.

12        Yes, sir.

13        JUROR:  Number 66, Dominic Daulerio.  I'll

14   talk to you at sidebar.

15        JUROR:  Number 104, Jo Lund Galligan, if I

16   can please talk to you at sidebar.

17        THE COURT:  All right.

18        Counsel, do you know of anything else you

19   wish me to ask now, other than perhaps to fill out

20   the --

21        JUROR:  Number 37, about the baby.

22        THE COURT:  You told us before that would

23   be an inconvenience because of your young child.

24        JUROR:  Yes.

25        THE COURT:  Looking at your list, is there

anything specific?

       MR. ROGERS:  May we approach you at sidebar?

       (Discussion at sidebar, on the record as follows:)

       MISS LEFEBER:  Defendant, Melvin Williams requested questions on voir dire.  I would ask your Honor ask -- I have two 14s.  Number 13 and the first 14 regarding the attempt to kill FBI agents.

       THE COURT: I will ask that.

       MISS LEFEBER:  Thank you, your Honor.

       THE COURT:  I'll give it back to you.

       13 and 14.

       MR. BROOKS:  As to Mr. Jackson, number 27 concerns confidential informants.

       THE COURT:  I don't know whether I would instruct the jury on that or not.  I don't know the factors of this confidential informant, whether he is just a person that got caught and is testifying.

       MR. ROGERS:  He is paid, the government will not challenge that, as a matter of fact, that's the information that they are giving us now, more and more each day.

       THE COURT:  I say, all of you have been involved in investigations and I have been, when

1    people say --

2        MR. BROOKS:  It is not a victim of

3    circumstances, it is the way, the thing comes about

4    him giving the FBI information.

5        THE COURT:  He can verify the shooting?

6        MR. BROOKS:  It sets the whole thing in

7    motion.

8        THE COURT:  I say, whatever information, if

9    there wasn't a shooting, we wouldn't be here

10   probably on this charge.

11       MR. PICHINI:  Your Honor, we asked

12   something of a variant of that question, almost like

13   the same number with respect to the --  trying to

14   determine whether there would be any juror

15   prejudiced as a result of the government paying

16   information.

17       THE COURT:  I don't mind giving it.  I'm

18   just saying I don't want to start characterizing

19   witnesses and then someone comes and says the judge

20   characterized him so and so, and there is no

21   evidence to support that when selecting a jury.  I

22   don't know who these witnesses are.  I don't want to

23   characterize them.  Police officers generally, FBI

24   officers, but this particular witness, if both sides

25   want me to characterize him, I would characterize

1  him and give your number 27.

2       MR. PICHINI:  Even with that, there's

3  almost an additional question, which is number 28,

4  that goes to the question of the government, the

5  convicted felon, if they have any bias or prejudice.

6       THE COURT:  I don't know.  As I say, I

7  don't know the facts of whether these are convicted

8  felons or what they are.

9       MR. PICHINI:  He is a convicted felon.

10      THE COURT:  I take it he is.

11      MR. ROGERS:  Several times.

12      THE COURT:  I will give that instruction.

13      MR. PICHINI:  The only other question the

14  government has, you asked the panel about conflicts

15  with the federal government.  There will also be a

16  number of Philadelphia Police Officers, we would ask

17  a similar question be asked with respect to

18  Philadelphia Police Officers.

19      MR. ROGERS:  We would be concerned that

20  there may be parties who believe the testimony of

21  the police officer because he is a police officer or

22  just because he is an FBI agent.  I know you covered

23  it generally, you had it about several other

24  things.  We are concerned, two other FBI agents were

25  shot here, we want be sure they just won't believe

the testimony of an FBI agent.

THE COURT: You can ask it. I asked it. You can ask it individually or to the panel as a whole. What do you want?

MR. ROGERS: To the panel as a whole.

THE COURT: All right, no problem.

Anyone else?

What I thought we would probably do, we have a number of jurors to hear at sidebar, rather than have them come up to sidebar, I was going to probably reach a point where the jurors who did not ask for sidebars and who we do not have to see, and didn't ask for sidebar, to excuse them for the evening, have them report back to the same seat in the morning. For those that we have to do sidebars on, to do them, we can do them in open court and I can put the other jurors in the ante area and call them in one at a time. It gets pretty difficult doing a number of witnesses here.

MR. ROGERS: I take it, we will go beyond the 5 o'clock hour?

THE COURT: I hope not.

MR. ROGERS: I have an appointment that is coming from out of town, to be in my office at 5 o'clock. When I say out of town, not a long

1    distance.  If I can keep them from coming, let me do

2    this.  I didn't mean a witness, someone working on a

3    case is what I meant to say.

4            THE COURT:  Why don't I, at 9:30 in the

5    morning.

6            MR. ROGERS:  This is somebody providing

7    some -- he is doing work product, put it that way,

8    for the defense.

9            THE COURT:  I'll ask the rest of these

10   questions, as best I can, permit you to ask that

11   question that you want to ask of the panel generally

12   and recess until tomorrow morning.  And, have the

13   jurors who we are going to see at sidebar, we know

14   we will see at sidebar come in at 9:30, have the

15   other jurors not come into the courtroom until

16   admitted, and tell them to report at 10.  Then we

17   can hear the ones at sidebar.

18           MR. PICHINI:  Your Honor, there is one

19   question that I actually had an affirmative answer

20   to, I notice it is one of the last ones that we

21   submitted, that's whether any people have either

22   religious or other beliefs that prohibit them from

23   rendering an opinion, they feel they can't render an

24   opinion or pass judgment.  I don't know if you think

25   it was covered by the frame of mind question.

1          THE COURT:  I asked it specifically about

2     race or religion.

3          MR. PICHINI:  I thought it was with respect

4     to the issue of prejudice.  This would be my

5     question, philosophies or religious beliefs, it is

6     passing judgment on another individual, number, some

7     form of 37, your Honor.

8          THE COURT: All right.  I'm easy.

9          MR. PICHINI:  Thank you, sir.

10         MR. ROGERS:  Thank you.

11         (In open court)

12         THE COURT:  Ladies and gentlemen, I would

13    ask, does the fact that this case involves alleged

14    possession of guns and firearms offend you in such a

15    way, that it would prevent you from rendering a fair

16    verdict, based solely upon the evidence presented at

17    trial?

18         Do you have any feelings about guns and

19    firearms that would prevent you from being fair to

20    the defendants in this case?

21         If your answer to that question revolves

22    about your feelings of guns and firearms and whether

23    any feelings that you have would prevent you from

24    being fair to the defendants in this case; if your

25    answer is yes, would you kindly raise your hand.

1    Would you just state your number and name.

2  Stand and state your name and number.

3    JUROR:  Roswitha Hoenisch, 141.

4    JUROR:  Fred Keeler, 157.

5    THE COURT:  What is it?

6    JUROR:  157.

7    JUROR:  Venice Roll, 264.

8    THE COURT:  Does the fact that this case

9  involves an alleged attempt to kill FBI agents

10  offend you in such a way, that it would prevent you

11  from rendering a fair verdict based solely upon the

12  evidence presented at trial?

13    Do you have any feelings about violence

14  which would prevent you from being fair to the

15  defendants in this case?

16    There will be a charge which revolves

17  around an alleged attempt to kill FBI agents, one of

18  the charges.

19    Would anything about that type of charge

20  prevent you from rendering a fair verdict based

21  solely upon the evidence presented at trial.  If so,

22  would you raise your hand.

23    All right, if you just stand and give us

24  your numbers.

25    JUROR:  Roswitha Hoenisch, 141.

JUROR:  Deanna Stewart, 308.

JUROR:  Fred Keeler, 157.

JUROR:  126, James Hammerman.

JUROR:  311, Robert Sunshine.

JUROR: 65, Brian Dalton.

JUROR:  57, Dale Conicella.

JUROR:  264, Venice Roll.

THE COURT:  It is anticipated that the government will present testimony of paid confidential informants and of alleged accomplices of the defendants.

This type of evidence, while legally admissible should be subjected to the highest amount of scrutiny by a jury.

Is there anyone that can not follow an instruction concerning the scrutiny to be given to the testimony of that type of paid confidential informant or accomplice?

If you could not follow an instruction that you are to scrutinize carefully the testimony of such a witness, would you kindly raise your hand.

No hands.  The answer is recorded as no.

Is there anyone on the panel, who would be offended or feel it improper for the government to use the testimony of paid informants or accomplices

of defendants. If you feel it is improper for the

government to use that testimony, would you kindly

raise your hand.

There are no hands and it is recorded as

no.

Do you have any opinions, religious

beliefs, philosophies or prejudices, that would

prevent you from being a fair and impartial juror in

this case or that would make you unable to come to a

verdict in this case?  For example, do you believe

that no person should ever be judged or convicted?

For example, do you believe that a person

is guilty just because he is here in court?

Do you have any types of basic beliefs,

opinions, philosophies, that would prevent you from

being a fair juror?

There are no hands and the answer is

recorded as no.

Counsel, do you have any other requests?

MR. ROGERS:  Yes, I do, your Honor.

THE COURT:  Which one?

There was the question I told you that you

could restate.

MR. ROGERS:  Yes.

THE COURT:  Go right ahead.

1    MR. ROGERS:  If there was any conflict in

2    testimony between an FBI agent or other law

3    enforcement officer on the one hand and a civilian

4    witness on the other hand, is there any among you

5    who would give more weight to the testimony of the

6    FBI agent or other law enforcement officer merely

7    because he was engaged as a law enforcement officer

8    or as an FBI agent?

9         THE COURT:  There are some hands.  Let me

10   see.  Which question --  okay, what's your number,

11   sir?

12        JUROR:  Number 157.

13        JUROR:  Number 334.

14        JUROR:  57.

15        JUROR:  77.

16        THE COURT:  There are no other hands.

17   Thank you.

18        MR. ROGERS:  Your Honor, there is a short

19   second part to that question.

20        THE COURT:  Go right ahead.

21        MR. ROGERS:  Thank you.  Would any among

22   you give less weight to the testimony of an FBI

23   agent or law enforcement officer for any reason?

24        (No response.)

25        THE COURT:  Very well.

1    MR. ROGERS:  Thank you, your Honor.

2        (Discussion at sidebar, on the record as

3    follows:)

4        THE COURT:  Counsel, why don't you look at

5    your sheets and starting with the jurors as they are

6    seated, if you believe or if you desire to see a

7    juror separately and to interrogate a juror

8    separately, you can so advise and I'll just run down

9    the list.  Juror 301, Snyder.

10       MISS LEFEBER:  Incidentally, she made that

11   request.

12       THE COURT:  So, that juror number 66,

13   Toletio, has requested a -- Daulerio requested a

14   sidebar?

15       MISS LEFEBER:  Yes.

16       THE COURT:  Juror 171, Lange.

17       MISS LEFEBER:  The same, your Honor.

18       THE COURT:  The juror who has a Florida

19   vacation but not requested a sidebar.  We know he

20   has a Florida vacation starting September 30th.

21       Juror number 27 has not requested --

22   Counsel wishes one, please state.

23       Juror number 245, not requested, juror

24   number 185 has not requested.  Juror number 32 has

25   not requested.  Juror number 263 has not requested,

juror number 175 has not requested.  Juror number 12

has not requested.  Juror number 141 desires a

sidebar.  Juror number 77 has told us of the

inconvenience in serving but not requested a

sidebar.  Juror number 212 has not requested.  Juror

number 104 has requested.

MISS LEFEBER:  Your Honor, if I may

interrupt.  I believe 77 has requested a sidebar.

MR. PICHINI:  She answered positively, your

Honor to the question that Mr. Rogers asked about

the FBI agent.

THE COURT:  Very well.

Juror number 212 has not.  Juror 104 has

requested.  Juror number 308 I believe is a

sidebar.  Juror number 313 I believe is a sidebar.

Juror number 325 is a sidebar.  Juror number 157 is

a sidebar.  Juror number 126, I believe is.

MISS LEFEBER:  Yes, your Honor.

THE COURT:  Juror number 311, I believe is.

MISS LEFEBER:  Yes.

THE COURT:  Juror 178 and 34 have not

requested.  Juror 290 has not requested.  Juror 114

has not requested.  Juror 65.

MISS LEFEBER:  Yes.

THE COURT:  Yes.

1    THE COURT:  Juror number 357.

2    MISS LEFEBER:  I believe so, yes, your

3  Honor.

4    THE COURT:  Yes.

5    MR. BROOKS:  Yes.

6    THE COURT:  Once again, I haven't factored

7  in the other.

8    Juror number 71?

9    MISS LEFEBER:  Yes, your Honor.

10    THE COURT:  All right.  Juror number 80.

11    Juror 115 has not.  Juror number 272 has

12  not.  Juror number 334 has not.

13    MISS LEFEBER:  Yes, sir.

14    MR. BROOKS:  Yes.

15    THE COURT:  All right.  Juror number 37,

16  yes.

17    Now other than the ones identified, do you

18  have any addition?  The only question is what time

19  will we come in tomorrow.

20    MISS LEFEBER:  Your Honor, has 264, next to

21  last, 264.

22    You have 334, 264 and 37.

23    THE COURT:  264, 37 and one other number.

24    MISS LEFEBER:  264, the last page.

25    MR. BROOKS:  Do you have 66 and 104?

THE COURT:  66, I know that.  I have 104,
yes.

(In open Court.)

THE COURT:  Members of the jury --

MR. PICHINI:  Excuse me, your Honor, there
is one matter, maybe we should discuss at sidebar.

(Discussion at sidebar, on the record as
follows:)

MR. PICHINI:  Your Honor, ironic enough,
juror 175, Levinthal, he is the individual that
knows Miss Lefeber, he doesn't know me but I know
his brother.  His brother is my next store neighbor.

MISS LEFEBER:  We are even.

MR. PICHINI:  I wanted to convey that and
place it in the record. He lives in Ardmore, he may
be in contact with his brother, during the trial.
We are neighbors.  I'm a neighbor, his brother is my
next store neighbor.

THE COURT:  I don't care.

MISS LEFEBER:  I have no problem with it,
if you have no problem with me.

You disclosed, you did what you wanted to
do.

THE COURT:  Let me say this, what I'll tell
the jurors I identified to be here at 9:30, I

1  suspect that it will take us longer than an hour.

2  What I think we may do, so the others don't have to

3  mill about the hall, have them come in at say 10:15,

4  and tomorrow morning, in the jury room here, we can

5  conduct the sidebars in this jury room so that the

6  jurors can come in here to sit down and we will

7  conduct the sidebar in there with the defendants

8  present.

9          MR. BROOKS:  I always wanted to see what

10 the jury room looked like.

11         THE COURT:  You will be disappointed.  We

12 have no windows, no pictures.  It is reach a

13 verdict, reach a verdict.  You will be disappointed

14 what it looks like.

15         Okay.

16         (In open court)

17         THE COURT:  The following jurors are to be

18 seated in your place as you are today, tomorrow

19 morning at 9:30.  Juror 301, juror number 66, juror

20 number 171, juror number 141, juror number 77, juror

21 number 104, juror number 308, juror number 325,

22 juror number 313, juror number 157, juror number

23 126, juror number 311, juror number 65, juror number

24 57, juror number 71, juror number 334, juror number

25 264 and juror number 37.

1      We will see each of you individually about

2  whatever matter it is that you wish to advise the

3  Court about.

4      All other jurors are to report to this

5  courtroom by 10:15 tomorrow morning.  You need not

6  come in at 9:30, be here at 10:15.  If your name is

7  on the list, be here at 9:30.  We will conduct the

8  individual voir dires.

9      JUROR:  I'm sorry, 313.  I didn't ask for a

10 sidebar.

11     THE COURT:  Okay.

12     You had told us what you wanted us to know,

13 you have a grandchild?

14     JUROR:  That's the one.

15     THE COURT:  Okay.

16     Did anyone want to see her notwithstanding

17 the fact that she has not personally requested a

18 sidebar?

19     There may be information that makes a

20 sidebar appropriate, even though it is not

21 requested.

22     MISS LEFEBER:  No.

23     MR. PICHINI:  No, your Honor.

24     THE COURT:  You need not come in until

25 10:15.

1    JUROR:  Number 65.  I didn't ask for a

2    sidebar.

3        MR. BROOKS:  We need him.

4        THE COURT:  I believe we have some

5    questions to ask you anyway.

6        Anyone else?

7        (No response.)

8        THE COURT:  Please do not discuss among

9    yourselves or with anyone else anything that has

10   happened in this room.  Please do not, those of you

11   with some knowledge of this case, do not tell it to

12   your fellow jurors.

13       We want you now not to discuss anything

14   about the case until we have a jury, until the Court

15   tells you, you can discuss it.

16       MR. DOSS:  I wanted to note that the second

17   juror was away, at the very beginning of your

18   statements.  I don't know other jurors told him.

19       THE COURT:  Mr. Daulerio, you are to report

20   here at 9:30 in the morning.  Please do not discuss

21   the case, it makes it that much more difficult to

22   get jurors that have no knowledge of the case or as

23   little of the case as is possible.

24       We will see you tomorrow morning. We think

25   we will have a jury before noon.

1    Thank you.

2         (Trial adjourned at 4:55 p.m.)

3

4

5         I, SIDNEY ROTHSCHILD, being a United States
Court Reporter, United States District Court,
6    Eastern District of Pennsylvania, do hereby certify
that I was authorized to and did report in shorthand
7    the above and foregoing proceedings, and that
thereafter my shorthand notes were transcribed under
8    my supervision, and that the foregoing pages contain
a true and correct transcription of my shorthand
9    notes taken therein.
         Done and signed this 10th day of March,
10   1995, in the City of Philadelphia, County of
Philadelphia, State of Pennsylvania.

11

12

13              SIDNEY S. ROTHSCHILD

14         U.S. Court Reporters
           United States District Court
15         Eastern District of Pennsylvania

16                 - - -

17

18

19

20

21

22

23

24

25